No. .........

First Circuit

ADRASTE LANDRENEAUX v. LOUISIANA WESTERN RAILROAD CO.

(December 8, 1925. Opinion and Decree.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Appeal—Par. 625.
The finding of the trial court that a shipment of potatoes were damaged in transit by the railroad, being clearly correct, is affirmed.

Appeal from the Parish of Evangeline, Hon. B. H. Pavy, Judge.

This is a suit to collect damages for deterioration of potatoes while in transit due to the negligence of the railroad. There was judgment for plaintiff and defendant appealed. Judgment affirmed.

J. H. Dore and J. C. Fruge of Ville Platte, attorneys for plaintiff, appellee.

Dubuisson, Perrault & Burleigh of Opelousas, attorneys for defendant, appellant.

MOUTON, J. Plaintiff, January 16, 1924, shipped a lot of sweet potatoes from Mamou, La., to Waco, Texas, over the lines of defendant company. The consignee refused to accept the potatoes when they arrived at their point of destination because of their deteriorated condition. They were sold in the open market at a price much under their usual commercial value. This suit is brought against the company for $434.95, the loss plaintiff alleges he has suffered. Judgment was rendered in favor of plaintiff for $408.59.

Defendant appeals.

The potatoes reached Waco three or four days after they were shipped. There was no delay in transit. They were, however, in bad condition when they arrived in Waco, and had to be disposed of at a loss. Plaintiff, the record shows, has a sweet potato curing plant at Mamou, and has three or four years' experience in shipping potatoes. He supervised the shipment and instructed those that loaded the potatoes to ship only those that were good and sound. Bess Richard and his son, Nelson, loaded the potatoes, which were assorted and classified by them before they were loaded. They both say they were good and sound. Bess Richard says they had no field cuts, meaning, he says, cut by the plow. Plaintiff says he had always instructed the loaders not to load any that had field cuts.

Professor J. J. Taubenhaus, Chief of the Division of Plant Pathology and Physiology of the Agricultural College of Texas, testified in the case. He had examined samples of the potatoes after their arrival in Waco. He said the specimens in the package submitted to his investigation showed "evidence of cuts and bruises." The evidence of the witnesses of plaintiff, above referred to, flatly contradicts this statement, and shows there were no cuts on these potatoes.

Plaintiff admits there were bruises on them when shipped, but says "we can't

help that in handling them." Clearly such bruises must be slight and are the necessary result of handling the potatoes for shipment. Professor Taubenhaus said cuts and bruises have the effect of opening the way to mush rot or soft rot in potatoes. There were no cuts when they were shipped, as appears from the preponderance of the evidence, and there were no openings for the entering of the poison that could have brought on the decay of deterioration in the potatoes. As to the bruises, they were the necessary result of their "handling." The potatoes were assorted and classified, and the inference is, were carefully handled. These bruises must have been slight, and it is not probable affected a considerable part of the shipment. We do not think such bruises were the cause of the decay which appeared in the potatoes when they reached Waco. If such bruises, which plaintiff says could not be helped in handling the potatoes, could cause such deterioration, it would be practically impossible for farmers to ship them to distant markets for sale. They would, in most every case, be debarred of recovery for damages in cases of the character here presented.

Bess Richard, one of the loaders, says the potatoes were sound, but had scratches which were made by their finger nails. There is no evidence from Professor Taubenhaus or any other witness showing that such scratches could have caused the deterioration in the shipment.

Across the bill of lading plaintiff wrote these words: "Vents open." Attorneys for defendant contend that these words are the only instructions given by plaintiff at the time of shipment. Counsel say: "The notation was the expression of a fact and amounted to a warning, meaning: 'The vents on this car are open; if a freeze comes be sure to close them.'" True, this shipment was in January, but as the direction given by the shipper was that the vents were open, it must be presumed that the weather was then not cold, or rather warm for the season, and so continued to the time of the arrival of the potatoes in Waco, as there is no proof to the contrary. It is shown by the testimony of Miller, a resident of Waco, and with fifteen years' experience in handling potatoes, that he found the car in which the potatoes had been shipped, with three plugs in, and one out, vents down and the car practically sealed up. He says on inspection he found the car "full of steam rising from the heated potatoes." This evidence makes it clear that the putting down of the vents had caused the overheating of the potatoes, which were steaming hot, if we are to believe this witness, whose credibility is not attacked. It was the duty of the defendant, common carrier, to take reasonable precautions to preserve these potatoes from injury. The defendant can not say as an excuse for not keeping the "vents open" that it was obeying the instructions of the shipper. To the contrary, it had taken the opposite course even if we are to accept the meaning of the words written across the face of the bill of lading as merely conveying a message or warning to keep the "vents open." The deterioration in the potatoes was not the result of any cuts, bruises or scratches existing when shipped for which plaintiff can be held responsible. The loss was not caused by the wrong or fault of the shipper. It was the result of the fault of defendant company in transporting the goods without proper ventilation, or its failure to exercise reasonable precautions to protect them from injury.

The amount of $408.59 accorded, being supported by the proof, the judgment is affirmed with cost.